UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CONSTANCE CATHCART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:11CV2125 JAR |
| | ) |
| AMERICAN EXPRESS, et al., | ) |
| | ) |
| Defendants | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 9). This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Constance Cathcart ("Plaintiff") alleges that, prior to the instant dispute, she had been a card member in good standing with Defendants[1] since 1984. (Complaint ("Compl."), ECF No. 1, ¶9). Plaintiff alleges that, on or about December 29, 2005, Plaintiff submitted a payment to Defendants for her account by means of a check ("the Check"), dated December 29, 2005, in the amount of $9,000.00. (Id., ¶10). Defendants deposited the Check in January 2006 and credited her account with this payment. (Id.). The Check cleared Plaintiff's bank account and Defendants received $9,000.00. (Id., ¶11). On or about March 2, 2006, Plaintiff's bank notified her that Defendants had re-submitted the Check for payment as a returned check. (Id., ¶¶12-13). Plaintiff asked Defendants to investigate this issue. (Id., ¶14). On or around May 18, 2006, Defendants provided a written apology to Plaintiff that they had processed the Check twice. (Id., ¶15).

Plaintiff asserts that, since May 18, 2006, she has continued to have problems due to Defendants' error. Specifically, Defendants have (1) continued to reflect a debt of $9,000.00 to her

---

[1] Plaintiff refers to Defendants American Express Company, American Express Centurion Bank, and American Express Travel Related Services Company, Inc. collectively as "Defendants". (Compl., ¶5).

account, (2) demanded that Plaintiff provide supporting documentation of payments, (3) assessed late fees, penalties and interest on Plaintiff's account, (4) canceled her account, and (5) rescinded approximately 485,000 previously accumulated Rewards Points from her membership in Defendants' Rewards Program. (Id., ¶16). Plaintiff claims that these issues have negatively affected her credit rating and score. (Id.).

In September 2008, Cathcart filed complaints with three national credit reporting agencies ("CRAs") regarding the false debt asserted by Defendants. (Id., ¶18). Plaintiff requested an investigation by the CRAs, but the investigation was unsuccessful in removing the false debt from Plaintiff's credit reports. (Id., ¶¶18-19).

Plaintiff likewise alleges she has been damaged by her diminished credit status. Plaintiff claims that she was denied a "lucrative employment contract," denied credit from other lenders, suffered a foreclosure on her property because she could not refinance her home, and lost her insurance agency license. (Id., ¶¶17, 20). Plaintiff asserts that, prior to March 2006, she had excellent credit.

On December 8, 2011, Plaintiff filed a three-count Complaint. Plaintiff alleges claims for Fair Credit Reporting Act ("FCRA") violations (Count I), Breach of Contract (Count II) and Tortious Interference (Count III).

**DISCUSSION**

**I. MOTION TO DISMISS**

A. Standard

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto Servs., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court "must accept the allegations contained in the complaint as true and draw all reasonable

inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. Benton v. Merrill Lynch & Co., 524 F.3d 866, 870 (8th Cir. 2008)(citation omitted).

B.    Analysis

1.    Fails to State a Claim

Defendants argue that Plaintiff cannot a state a claim on any of the three counts. Defendants construe Plaintiff's Complaint as alleging that she is entitled to a credit to her charge account for $9,000.00. (Defendants' Memorandum of Law in Support of Their Rule 12(b)(6) Motion to Dismiss ("Memorandum"), ECF No. 10, p. 4). Defendants, however, note that Plaintiff alleges that the second $9,000.00 was never deducted from her account. (Id. (citing Compl., ¶32)) Thus, any report showing that she owed $9,000.00 was correct. (Id.)

The Court finds that Defendants misconstrue Plaintiff's allegations. The Court reads Plaintiff's Complaint as alleging that Defendants continued to reflect on their billing and on their reports to the CRAs a $9,000.00 debt owed by Plaintiff, even though she had paid off the full amount of her bill. Accordingly, Defendants' argument that Plaintiff fails to state a claim because their billing was correct fails because this argument does not reflect the pleadings.

2.    Statute of Limitations on FCRA Claim

Plaintiff claims that Defendants violated the FCRA by improperly furnishing information to CRAs that Defendants knew was erroneous. (Compl., ¶¶22-26). Defendants assert that Plaintiff's claim is barred by the FCRA statute of limitations, which requires the commencement of a civil action "not later than the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. §1681p. Defendants contend that Plaintiff's FCRA claim is barred because Plaintiff brought this claim three years after the date she discovered the purported violation in 2008. (Memorandum, p. 5).

In response, Plaintiff claims that the statute of limitations does not bar her FCRA claim because the argument "overlooks Defendants' subsequent violations of the FCRA." (Plaintiff's Memorandum in Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss ("Response"), ECF No. 15, p. 4). Plaintiff maintains that each time Defendants furnish inaccurate reports constitutes another violation of the statute and, accordingly, her claim is not barred by the statute of limitations. (Response, p. 5) (citing Hyde v. Hibernia Nat'l Bank, 861 F.2d 446, 450 (5th Cir. 1988)("each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies")).

The Court notes that the "majority of courts" considering the statute of limitations under the FCRA "have drawn upon defamation's traditional 'multiple-publication rule.'" Larson v. Ford Credit, No. 06-CV-1811 (JMR/FLN), 2007 U.S. Dist. LEXIS 4718, at *5 (D. Minn. June 27, 2007). "Under this rule, each publication of the same falsehood by the same defamer is a separate cause of action, thus starting the limitations clock anew." Id. (citing Restatement (Second) of Torts § 577A(1)). In the FCRA context, this means each transmission of erroneous credit information is a separate FCRA violation. Id. (citing cases). "[T]he Court finds that each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a

separate FCRA violation subject to its own statute of limitations." Id., at *12; Baratto v. Citizens Auto. Fin., Inc., 2011 U.S. Dist. LEXIS 93741, at *13 (D. Minn. Aug. 1, 2011)("the Court concludes that a new and distinct claim arises each time that Citizens fails to conduct a reasonable investigation in response to a dispute lodged by Baratto").

Here, Plaintiff alleges that Defendants "[c]ontinu[e] to furnish inaccurate information about the erroneous debt alleged to be owed by Cathcart, including through the present date." (Compl., ¶24(c)). Thus, based upon Plaintiff's allegation of a continuing violation, the Court finds that her FCRA claim is not barred by the statute of limitations.

### 3. Preemption of Tortious Interference Claims

Finally, Defendants claim that the FCRA preempts Plaintiff's tortious interference claim. "The FCRA contains two, arguably overlapping, preemption provisions." Mattice v. Equifax, No. 03-1060 (RHK/JSM), 2003 U.S. Dist. LEXIS 10162, at *4 (D. Minn. June 13, 2003). Section 1681h(e) is the FCRA's original preemption section. Id. In it, Congress preempted all state actions against the furnishers of credit information that are "in the nature of defamation, invasion of privacy, or negligence . . . except as to false information furnished with malice or willful intent [to] injure [the] customer." 15 U.S.C. § 1681h(e). Section 1681h(e), therefore, permits state actions to survive a motion to dismiss, so long as their proponents allege malice or willful intent. Mattice, 2003 U.S. Dist. LEXIS 10162, at *4.

In the Consumer Credit Reporting Reform Act of 1996, however, Congress added a new preemption provision. Id. Section 1681t(b) provides, in pertinent part: "[n]o requirement or prohibition may be imposed under the laws of any State ... (1) with respect to any subject matter regulated under ... (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies..." 15 U.S.C. §1681t(b)(1)(F). Plaintiff argues

that the absolute immunity provided by § 1681t(b)(1)(F) is in apparent conflict with the more limited immunity of § 1681h(e). Response, p. 7; Mattice, 2003 U.S. Dist. LEXIS 10162, at *4.

Plaintiff's tortious interference claim alleges that Defendants continued reporting erroneous information to CRAs, which affected Plaintiff's ability to form other business contracts. (Compl., ¶¶36-39). Defendants argue that Plaintiff's tortious interference claims involves matters regulated under §1681s-2, which prohibits furnishers of information from providing inaccurate information. Memorandum, pp. 6-7; 15 U.S.C. §1681s-2(a). Section 1681s-2 also requires furnishers of information to investigate any disputed information. 15 U.S.C. §1681s-2(b). Therefore, Defendants assert that the tortious interference claim is preempted by 1681t(b)(1)(F).

In response, Plaintiff contends that the preemption provision that governs tortious interference claims is 15 U.S.C. §1681h(e), not §1681t(b)(1)(F). (Response, p. 5). Plaintiff cites several courts that have held that such claims fall under Section 1681h(e)'s scope. (Response, p. 6 (citing cases)). Because Plaintiff alleges that Defendants acted with knowledge and willfully, she asserts that her tortious interference claim is not preempted. See Response, p. 6; Gohman v. Equifax Info. Servs., 395 F. Supp. 2d 822, 829 (D. Minn. 2005)(tortious interference claims under 15 U.S.C. §1681h(e) are not preempted if the defendant acted with malice or willful intent to injure). Plaintiff maintains that the Court should apply §1681h(e) because "a general statute must yield when there is a specific statute involving the same subject matter." Craighead Elec. Coop. Corp. v. City Water & Light Plant, 278 F.3d 859, 861 (8th Cir. 2002); Response, p. 6.

Moreover, Plaintiff asserts that, even if §1681t(b)(1)(F) applies to tortious interference claims, the Court should discern that §1681t(b)(1)(F) applies only to statutory, not common law claims. (Response, pp. 6-8). Plaintiff claims that §1681t(b)(1)(F)'s prohibition of any "laws of the State" would seem to conflict with section 1681h(e), which would allow tort claims against a furnisher of information for claims "in the nature of" defamation, invasion of privacy, or negligence,

provided there is a showing of malice. (Response, p. 7). Plaintiff contends that reading section 1681t(b)(1)(F) as applying only to statutory claims comports with the plain language of the statute and gives meaning to both sections. Other subparagraphs of 1681 provide that they "shall not apply to any State law in effect on September 30, 1996." 15 U.S.C. §1681t(b)(1(B), (E). Some courts have interpreted this section as applying only to statutes because "it makes no sense to speak of tort cause of action ... as coming into 'effect' after a specific date in 1996, [accordingly] any such subsequent state enactments would have to be statutory in nature." Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 425 (E.D. Pa. 2006); Response, p. 15. In addition, Plaintiff cites to the prefatory language of Section 1681t(b), which provides that "no requirement or prohibition may be imposed under the laws of any State." (Response, p. 15). The Manno court noted that "[t]his language, while a natural-sounding way of forbidding state legislatures to 'impose' statutory 'requirements' and 'prohibitions' on parties subject to the FCRA, would be an awkward, roundabout way of forbidding state courts to interpret tort law to 'impose requirements or prohibitions.'" Id., 439 F. Supp. 2d at 426; Response, p. 15. Likewise, Plaintiff "notes that the term 'laws' is a natural way to refer to state statutory schemes, but is awkward at best regarding tort and common law claims." (Response, pp. 15-16).

The Court finds that Plaintiff's tortious interference claim is preempted by the FCRA. First, the Court finds that 15 U.S.C. §1681t(b)(1)(F) applies to tortious interference claims. Plaintiff's tortious interference claim is based upon her allegation that Defendants continued reporting erroneous information after Plaintiff told them the information was inaccurate. These allegations clearly relate to conduct proscribed in §1681s-2. In turn, the broad preemption provision in §1681t(b)(1)(F) applies to conduct regulated by §1681s-2. 15 U.S.C. §1681t(b)(1)(F).

Second, the Court agrees with recent decisions, particularly by the Seventh and Second Circuits, that held that §1681t(b)(1)(F) is not in conflict with §1681h(e), and §1681h(e) "does not

insulate state tort actions from preemption." Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 47 (2d Cir. 2011). "Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims." Purcell v. Bank of America, 659 F.3d 622, 625 (7th Cir. 2011); Macpherson, 665 F. 3d at 47-48. "Put differently, the operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption." Macpherson, 665 F.3d at 48. As the Seventh Circuit persuasively reasoned:

> Section 1681h(e) does not create a *right* to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe. Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code. The same legislation also added § 1681s-2. The extra federal remedy in § 1681s-2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges. Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s-2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.

Purcell, 659 F.3d at 625 (emphasis in original).

The Court is not persuaded by Plaintiff's argument that §1681t(b)(1)(F) applies to common law, not statutory claims. The Purcell court noted that "a reference to state 'laws' comprises all sources of legal rules[.]" Id., 659 F.3d at 624 (citing Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). The Court found no basis for finding that "laws" does not refer to common law. Purcell, 659 F.3d at 624. The Court agrees with the reasoning of Purcell and Erie and holds that "a federal statute preempts state common law to the same extent as it preempts state statutory law." Purcell, 659 F.3d at 624 (citing PLIVA, Inc. v. Mensing, 131 S. Ct. 2567, 180 L. Ed. 2d 580 (2011)). Accordingly, the Court finds that §1681t(b)(1)(F) applies equally to common

law and statutes, and Plaintiff's state law tortious interference claim is preempted by §1681t(b)(1)(F).

4. Request to Amend Complaint

In her Response, Plaintiff requests leave to amend her Complaint should the Court find any deficiencies in the Complaint. (Response, p. 10). While the Court will consider any motions for leave to amend the Complaint, no motion currently is before the Court and Plaintiff has not explained the substance of any proposed amendment. Accordingly, the Court denies Plaintiff's request to amend at this point. Misischia v. St. John's Mercy Health Sys., 457 F.3d 800, 805 (8th Cir. 2006).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss [9] is **GRANTED**, in part, and **DENIED** in part. Plaintiff's tortious interference claim is dismissed.

Dated this 23rd day of October, 2012.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE