# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| CONSTANCE CATHCART, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:11-CV-2125-JAR ) |
| AMERICAN EXPRESS COMPANY, AMERICAN EXPRESS CENTURION BANK, and AMERICAN EXPRESS TRAVEL RELATED SERVICES, CO., INC., | ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants American Express Company, American Express Centurion Bank and American Express Travel Related Services Company, Inc. (collectively "Amex")'s Motion for Summary Judgment. (Doc. No. 80) The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted in part and denied in part.

### I. Factual background

This action for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., and breach of contract arises out of the alleged mishandling of a payment made by Plaintiff on her American Express account in December 2005. On December 29, 2005, Plaintiff submitted a $9,000 payment to Amex by check drawn on a Bank of America ("BOA") checking account registered to her business. Amex deposited the check in January 2006 and credited her account for this payment. The check cleared Plaintiff's account on January 9, 2006. On March 2, 2006, BOA notified Plaintiff that Amex had resubmitted the December check for payment as a

returned check. Plaintiff informed BOA she did not want the check processed a second time, and BOA reversed the transaction. Amex debited Plaintiff's account $9,000 for the returned check. Plaintiff contacted Amex to dispute the issue. By letter dated May 18, 2006, Amex apologized to Plaintiff for processing the check twice to her bank account and credited her account pending an investigation. In November 2007, Amex concluded its investigation and determined it had never received the funds from the December check. Plaintiff disputes this. (SOF at ¶ 21, 29 and Pltf.'s Resp.) Amex requested Plaintiff pay the $9,000 owed on her account and she refused. In April 2008 Amex closed Plaintiff's account and issued a negative report to the three major credit reporting agencies ("CRAs"), TransUnion, Equifax and Experian.

Plaintiff alleges that in September 2008, she filed complaints with the CRAs regarding the $9,000 debt reported by Amex and requested an investigation. (Complaint, Doc. No. 1 at ¶ 18) Plaintiff further alleges Amex failed to conduct a reasonable investigation of the disputed information in her credit report and has continued to furnish inaccurate reports about the debt she allegedly owed. (Id. at ¶¶ 23-24) As a result, Plaintiff claims her credit score/rating has been negatively impacted, she has been denied credit from other lenders, she lost the value and use of her accumulated Rewards Points, she lost her insurance agency license, and a "lucrative employment contract" was rescinded. (Id. at ¶ 25)

On December 8, 2011, Plaintiff filed a three-count Complaint alleging claims for violations of FCRA (Count I), breach of contract (Count II) and tortious interference (Count III). The Court found Plaintiff's state law tortious interference claim preempted by FCRA, §1681t(b)(1)(F), and dismissed Count III. (Doc. No. 28) Amex moves for summary judgment on the remaining claims.

II.     **Legal Standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the Court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

### III.     Arguments of the parties

Amex moves for summary judgment for several reasons. First, Plaintiff's claims are barred by FCRA's two-year statute of limitations. (Doc. No. 82 at 5-6)  Second, Plaintiff has not presented any evidence that she suffered damages caused by Amex's duties under § 1681s-2(b) to investigate a consumer dispute made to a credit reporting agency. (Id. at 7-8) Third, Plaintiff has not presented any evidence that Amex retained the $9,000 payment from the December check. (Id. at 8-10) Fourth, FCRA does not permit Plaintiff to assert a private cause of action against Amex for allegedly furnishing incorrect information to a CRA under § 1681s-2(a). (Id. at 10-11) Fifth, Plaintiff has failed to produce any evidence that Amex's investigations of her disputes were improperly conducted. (Id. at 11-14) Finally, Plaintiff has failed to present evidence that Amex's reporting caused her damages. (Id. at 14-16)

In response, Plaintiff argues there are genuine issues of material fact as to whether Amex received the $9,000 payment from the check (Doc. No. 86 at 5-7), when Amex began reporting her account as delinquent (Id. at 7-8), and whether Amex conducted a reasonable investigation. (Id. at 8-9) Plaintiff further argues her FCRA claim is not time barred. (Id. at 9-10)

Amex replies it is entitled to summary judgment because Plaintiff is unable to establish actual damages. It is undisputed that Plaintiff's disputes were communicated by the CRAs to Amex in February 2011, yet her only claimed damages, i.e., a lost employment opportunity in March 2008, and the loss of her Farmers Insurance agency sometime prior to December 1, 2009, preceded the February 2011 reporting date and, in fact, were incurred more than two years prior to the filing of the instant lawsuit. Thus, they could not have been caused by Amex's alleged failure to investigate the February 2011 disputes. (Doc. No. 89 at 2-3)

**IV.     Discussion**

**A.  FCRA**

Congress enacted FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." <u>Safeco Ins. Co. of America v. Burr</u>, 551 U.S. 47, 52 (2007); 15 U.S.C. § 1681(a)(3)-(4). While primarily aimed at credit reporting agencies ("CRAs"), FCRA also places obligations on creditors that furnish credit information to those agencies. Furnishers of information, such as Amex,[1] have a duty to provide accurate information to CRAs, § 1681s–2(a), and to investigate the accuracy of reported information upon receiving notice of a dispute. § 1681s–2(b). The duties imposed by § 1681s–2(a) are not subject

---

[1] Amex does not dispute it is a furnisher. (Doc. No. 82 at 10 n.4)

to private rights of action.[2] Zotta v. NationsCredit Financial Services Corp., 297 F.Supp.2d 1196, 1204 n.6 (E.D. Mo. 2003) (citing Yutesler v. Sears Roebuck & Co., 263 F.Supp.2d 1209, 1210-11 (D. Minn. 2003)); § 1681s-2(d).

Consumers may, however, enforce a furnisher's duty of accurate reporting through FCRA's dispute process. Hurocy v. Direct Merchants Credit Bank, N.A., 371 F.Supp.2d 1058, 1060 (E.D. Mo. June 6, 2005) (collecting cases); §§ 1681n, 1681o. When a furnisher of information receives notice of a consumer dispute from a CRA, it must conduct an investigation, review information from the CRA, report the results of the investigation to the CRA, and, if the investigation uncovers that information was incorrectly furnished, report the inaccuracies to all CRAs possessing the incorrect information. § 1681s–2(b)(1)(A)-(D).

Recovery for a negligent violation of FCRA is limited to actual damages and attorneys' fees and costs. §1681o. Willful violations allow for recovery of either actual or statutory damages (from $100–$1,000), whichever is greater, in addition to attorney's fees and costs. §1681n. The Court may also impose punitive damages to punish a willful violation of the FCRA. Id. Actual damages are not a statutory prerequisite to an award of punitive damages under FCRA. Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998).

Although Plaintiff did not specify in her complaint which portion of FCRA applied to her claims, she concedes there is no private cause of action under § 1681s-2(a) and states she has not asserted a claim under that section. (Doc. No. 86 at 11) Rather, § 1681s-2(b) encompasses

---

[2] FCRA provides that the provisions of § 1681 s–2(a) shall be enforced exclusively by federal and states agencies and officials identified in the Act. See 15 U.S.C. § 1681s–2(d) (the duty to provide accurate information "shall be enforced exclusively under § 1681s of this title by the federal agencies and officials and the state officials identified in that section"). Johnson v. PHH Mortg. Service Center, 2012 WL 5932806, at *4 (E.D.Mo. Nov. 27, 2012).

Plaintiff's allegations that Amex failed to conduct a reasonable investigation of the disputed information in her credit report by failing to review all relevant information, failing to report the inaccurate information to the CRAs, and continuing to furnish inaccurate reports through the present date. (Compl., ¶ 24) To avoid summary judgment on her FCRA claim, Plaintiff must present evidence that Amex failed to comply with the provisions of § 1681s–2(b) as well as evidence of harm and causation, or willfulness entitling her to statutory or punitive damages. Reed v. Experian Information Solutions, Inc., 321 F.Supp.2d 1109, 1114 (D.Minn. 2004).

Initially, Amex contends that Plaintiff's claims are barred by FCRA's statute of limitations, requiring that any action be brought within two years from the date on which the liability arises. § 1681p. (Doc. No. 82 at 5-7) Plaintiff was aware of Amex's negative reporting by the summer of 2008. (SOF at ¶ 32) Plaintiff claims she began to incur damages caused by the negative reporting as early as March 2008, when an overseas job opportunity was withdrawn due to her credit status. (Compl. at ¶ 17; Deposition of Constance Cathcart (Cathcart Depo.), Doc. No. 81-1 at 96:6-14, 101:1-7, 126:16-21) She also claims her Farmers Insurance agency was terminated on December 1, 2009. (Compl. at ¶ 20; Cathcart Depo., at 23:8-22; 25:2-14; 43:3-11)[3] Plaintiff filed this action on December 8, 2011, more than two years after learning of Amex's negative reporting and more than two years after allegedly incurring damages resulting from that reporting. As such, Amex argues her claim based on damages incurred prior to December 8,

---

[3] Amex argues the evidence of record contradicts Plaintiff's damages claim for loss of her insurance agency. (Doc. No. 89 at 6-8) Specifically, Ron Freiburger, Division Marketing Manager for Farmers, testified on deposition that Plaintiff's insurance agency was terminated because she abandoned the agency and for no other reason. (Freiburger Depo., Doc. No. 90-1 at 10:16-24, 12:5-7) Amex further argues there is no admissible evidence of any specific credit reporting by Amex as it relates to Plaintiff's claim that a job offer was withdrawn due to her negative credit report. (Doc. No. 89 at 8-10) Because the Court is granting Amex's motion as to Plaintiff's claim for damages allegedly incurred prior to February 2011, the Court need not address these arguments.

2009 is time-barred. The Court agrees, concluding that Plaintiff has no claim under § 1681s-2(b) based on damages incurred prior to December 8, 2009.

Plaintiff's entire claim is not time-barred, however. This Court previously ruled on Amex's motion to dismiss that each re-report of erroneous credit information is a separate FCRA violation. (Doc. No. 28 at 4-5) With respect to any violations occurring after December 8, 2009, Amex correctly notes that a furnisher's duty to investigate under § 1681s-2(b)(1) does not arise until it receives notice of a dispute pursuant to § 1681i(a)(2). See Zotta, 297 F.Supp.2d at 1205 ("Receipt of notice pursuant to § 1681i(a)(2)-not mere knowledge of a dispute pursuant to a consumer's complaint- triggers the duties set forth in § 1681s-2(b)(1)(A)-(D).") Despite Plaintiff's allegation that she filed complaints with each of the three major CRAs in September 2008, the record contains no evidence that Amex received notice of her dispute until February 2011. (SOF at ¶¶ 33-37) Amex cannot be liable for damages for any act or omission committed prior to February 2011, because a furnisher of credit information has no responsibility to investigate a credit dispute until *after* it receives notice from a CRA. See Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002) ("A private litigant can bring a lawsuit to enforce § 1681 s–2(b), but only after reporting the dispute to the CRA, which in turn reports it to the furnisher."); Bruce v. First U.S.A. Bank, N.A., 103 F.Supp.2d 1135, 1144 (E.D. Mo. 2000) (First U.S.A.'s duty to investigate, and consequently any liability arising therefrom, did not commence until it received notice from a credit reporting agency that plaintiff disputed the First U.S.A. accounts."). See also, Smith v. Citibank (South Dakota), N.A., 2001 WL 34079057, at *3 (W.D.Mo. Oct. 3, 2001) (citations omitted). Accordingly, Plaintiff's recovery is limited to damages incurred after February 2011.

Next, Amex argues that Plaintiff has no evidence she was denied credit or sustained

actual damages as the result of its alleged failure to investigate the 2011 disputes. (Doc. No. 82 at 7-8) "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.' " Fahey v. Experian Information Solutions, Inc., 571 F.Supp.2d 1082, 1089 (E.D.Mo. 2008) (quoting Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir.2001)). See also Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-61 (11th Cir. 1991) (upholding the grant of summary judgment to the defendant for lack of a causal connection between the statutory violation and the plaintiff's injury).

Plaintiff responds that a denial of credit is not a prerequisite to recovery under FCRA, citing Guimond v. TransUnion Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) and Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1109 (9th Cir. 2012). (Doc. No. 86 at 10) Actual damages under FCRA may include damages for emotional distress, even if the consumer has suffered no out-of-pocket losses, as well as damages for injury to reputation and creditworthiness. Guimond, 45 F.3d at 1332–33 (overturning a district court's grant of summary judgment and observing that "the issue of causation should have been left for a fact finder to determine.").

Here, Plaintiff testified regarding the embarrassment and humiliation she has experienced as a result of Amex's negative reporting and its effect on her career, ability to make money, and self-worth. (Cathcart Depo. at 94:17-25; 96:18-20; 98:7-100:6) While the Eighth Circuit has not specifically addressed the standard to be applied to emotional distress damages, Zean v. Unifund CCR Partners, 2009 WL 2461723, at *3 (D. Minn. Aug. 10, 2009), objective evidence of emotional distress is not always required before a plaintiff may recover. Graham v. CSC Credit Services, Inc., 306 F.Supp.2d 873, 880 (D.Minn.2004) (plaintiff's testimony regarding

frustration, anxiety, and humiliation raised a sufficient issue of fact regarding whether he suffered emotional distress to survive a motion for summary judgment.); Bakker, 152 F.3d at 1007 (plaintiffs' failure to produce any actual out-of-pocket expenses or costs incurred as result of defendant's willful conduct did not preclude award of actual and punitive damages for FCRA violations, where plaintiffs testified about how they felt when defendant obtained their credit reports and violated their privacy, thereby causing them some emotional distress.). See also Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834–35 (8th Cir.1976) (awarding actual damages under the FCRA based on claims of emotional distress only); Stevenson v. TRW Inc., 987 F.2d 288, 296–97 (5th Cir.1993) (emotional distress damages may include damages for embarrassment, humiliation and mental anguish). "Emotional distress is, by its nature, extremely subjective, and often the only evidence of emotional distress will be the testimony of the distressed person." Meyer v. F.I.A. Card Services, N.A., 780 F.Supp.2d 879, 885 (D.Minn. 2011) (quoting Edeh, 748 F.Supp.2d at 1042). Based on Plaintiff's deposition testimony, the Court cannot say that Plaintiff, as a matter of law, is not entitled to recover damages for embarrassment and humiliation.

Amex further argues Plaintiff has presented no evidence that Amex was in fact paid $9,000 from the December check. (Doc. No. 82 at 9-10) There are no records establishing that BOA transferred any money to Amex to satisfy the December check. (Deposition of Roxanne Hollingsworth, Doc. No. 81-12 at 20:23-21:4; 27:25-28:17; 31:8-18; 37:12-38:17) In addition, Wachovia (now Wells Fargo) has no documentation showing a second deposit to Amex's account. (Deposition of Timothy Merck, Doc. No. 81-5 at 32:9-25; 34:19-35:4) The return of the December check was included in a multiple-item transaction dated March 6, 2006 on Amex's statement and described as "deposited item returned, ADV #828277." (Id. at 17:4-19) According

to Wells Fargo, this description is consistent with a reversal of the payment, and not with a rejection of a twice-deposited check. (Id. at 33:20-34:5)

In response, Plaintiff argues the fact Amex was debited $9,000 on March 6, 2006 does not defeat her claim because it is consistent with Amex presenting the check twice, and receiving a $9,000 payment twice.[4] (Doc. No. 86 at 6-7) Plaintiff points to Amex's May 18, 2006 letter (Doc. No. 81-9) apologizing for processing her check twice to her bank account as further evidence that it submitted the December check twice for payment. (Doc. No. 86 at 7) In addition, her bank records show the December check was cashed on January 5, 2006 and cleared her bank account on January 9, 2006. On March 1, 2006, the December check was resubmitted, and another $9,000 removed from her account. This second $9,000 was returned to her account on March 2, 2006. This she argues is sufficient to raise an issue of material fact as to whether Amex received the $9,000 check proceeds. (Doc. No. 86 at 5-6)

The Court must consider the facts in the light most favorable to Plaintiff. In doing so, the Court finds genuine issues of material fact remain as to whether Amex received Plaintiff's $9,000 payment. In particular, the Court notes that Amex has no documentation of the actual March 6, 2006 chargeback, since many of the records regarding the transaction were beyond Wachovia's document retention period. (SOF at ¶ 47)

Finally, Amex argues Plaintiff has failed to produce any evidence that its investigation of her disputes was unreasonable. (Doc. No. 82 at 11-14) Amex asserts that as a furnisher of information, it is required to investigate only what is contained in the CRAs' dispute notices as to

---

[4] Plaintiff argues that the two bank advices relied on by Amex, dated August 28, 2006 (Doc. No. 81-8) and October 3, 2006 (Doc. No. 81-11), were generated by Wachovia, not Amex, and cannot be authenticated as business records. The Court has not relied on these documents in reaching its decision here.

the nature of the dispute. (Doc. No. 82 at 11) (citing Edeh v. Midland Credit Management, Inc., 413 Fed.Appx. 925, 926 (8th Cir. 2011); Anderson v. EMC Mortg. Corp., 631 F.3d 905, 908–09 (8th Cir.2011); Chiang v. Verizon New England, Inc., 595 F.3d 26, 38 (1st Cir.2010)). Here, Plaintiff has presented no evidence of the contents of the CRAs' notices to Amex, relying instead on documents, conversations and emails produced during the long-running dispute she personally undertook with Amex. (Doc. No. 82 at 12)

Plaintiff responds that Amex has produced no evidence of *any* investigation into her account after receiving notice from the CRAs. (Doc. No. 86 at 9) Even assuming Amex was entitled to rely on its earlier investigation,[5] the results of that investigation show that Amex deposited the December check twice; Plaintiff's bank records show a payment to Amex, and an Amex representative admitted to her that she was owed a credit. (Id.)

In reply, Amex argues it had no obligation to re-investigate Plaintiff's dispute where she failed to establish that she provided additional information to the CRAs, which was in turn provided to Amex in February 2011. (Doc. No. 89 at 12)

Amex is correct that Plaintiff bears the burden of demonstrating that an investigation is unreasonable. See Stewart v. Credit Bureau, 734 F.2d 47, 51 n.5 (D.C.Cir. 1984). Nevertheless, multiple courts have held that the reasonableness of an investigation under FCRA is an issue of fact for a jury. Hurocy v. Direct Merchants Credit Card Bank, N.A., 371 F.Supp.2d 1058, 1060 (E.D.Mo.2005) (citing Bruce, 103 F.Supp.2d at 1143)). Thus, Amex "must demonstrate legal certainty that it met all obligations to avoid having the reasonableness of its response qualify as a triable issue of fact." Fregoso v. Wells Fargo Dealer Services, 2012 WL 4903291, at *7

---

[5] The reasonableness of this initial investigation, consisting of a review of available account statements and bank advices, and conducted before Amex reported Plaintiff's account to the CRAs, is not directly before the Court.

(C.D.Cal. Oct. 16, 2012).

As discussed above, there is a material factual dispute as to whether the information reported by Amex against Plaintiff was accurate. Plaintiff repeatedly insisted through telephone conversations and written correspondence that she did not owe Amex $9,000. The three CRAs notified Amex of Plaintiff's disputes regarding the $9,000 debt reported on her account. This notice came directly to Amex from the CRAs. Amex's argument that Plaintiff failed to present evidence of the CRAs' notices is disingenuous; certainly, Amex was aware of the contents of the CRAs' notices. The reasonableness of Amex's actions following receipt of those notices is best left to a jury.

### B. Breach of contract

In Count II of her complaint, Plaintiff alleges that in March 2006, Amex falsely resubmitted the December check, resulting in a second $9,000 payment. When this second payment was reversed by BOA, Amex reported the transaction as a debit for a returned check. Plaintiff further alleges that despite her demands to correct the information and credit her account, Amex has failed to do so. (Compl. at ¶¶ 31-34) The Court notes that neither party has directed any arguments at Count II. Nevertheless, because the Court concludes there is an issue of material fact as to whether Amex received and retained the disputed $9,000 payment, Amex's motion for summary judgment on Plaintiff's claim for breach of contract will be denied.

### V. Conclusion

For these reasons, Amex's motion for summary judgment will be granted in part with respect to Plaintiff's claims for damages incurred before February 2011. Because material fact issues remain as to whether Amex received Plaintiff's $9,000 payment, whether Plaintiff has suffered any damages caused by Amex's alleged failure to investigate, and whether Amex failed

to conduct a reasonable investigation of her disputes, Amex's motion will be denied in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [80] is **GRANTED** in part as to Plaintiff's claims for damages incurred prior to February 2011. In all other respects Defendants' motion is **DENIED.**

_____
**JOHN A. ROSS
UNITED STATES DISTRICT JUDGE**

Dated this 17th day of October, 2014.